IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| KATHERINE RODRIGUEZ, *individually and on behalf of all others similarly situated,* | ) | Case No.: 6:26-cv-00996-JSS-DCI |
| Plaintiffs, | ) | |
| v. | ) | |
| TOMOCREDIT, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT TOMOCREDIT INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY FURTHER PROCEEDINGS IN THIS CASE AND INCORPORATED MEMORANDUM OF LAW**

Defendant TomoCredit Inc. d/b/a Tomo Card (Tomo), pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, moves this Court for an order (1) compelling Plaintiff to submit her claims to binding arbitration per the parties' arbitration agreement, and (2) staying further proceedings in this case until arbitration has been completed.

## I.

## INTRODUCTION

In this putative class action, Plaintiff alleges that Tomo violated the Telephone Consumer Protection Act (TCPA) when it allegedly sent Plaintiff three telemarketing text messages from August, 14, 2025, February 24, 2026, and March 1, 2026. (Compl. ¶¶ 14, 15).

Plaintiff's relationship with Tomo began in December 2021 when she applied for a Tomocredit Card. Plaintiff completed the application electronically through Tomo's web-based application portal, and she expressly and affirmatively accepted Tomo's terms and conditions, which included a provision mandating individual arbitration of all disputes and claims and precluding any disputes and claims from proceeding on a class, representative, or collective basis.[1]

The arbitration provision is broad and requires individual arbitration of any dispute or claim "arising in any way from" a customer's use of Tomo's services. Ex. 1.[2] It plainly encompasses Plaintiff's claims in this case.

Since the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), it has been well-established that agreements calling for individual arbitration and precluding class claims are valid and enforceable under the FAA. Plaintiff agreed to a valid arbitration provision, which bars class actions, and the claims she asserts are within its scope. Accordingly, the Court should compel arbitration and stay all proceedings.

---

[1] Plaintiff's application also included an express authorization for Tomo to contact her electronically regarding her account. Tomo reserves the right to file a motion to dismiss and/or a motion for summary judgment before the arbitrator based on any substantive defenses to Plaintiff's claims (or before this Court, if this motion is denied).

[2] The Terms of Use agreed to by Plaintiff is attached hereto as Exhibit 1 ("Ex. 1").

## II.

## STATEMENT OF FACTS

### A. Tomo's Background

Tomo is a fintech company that offers credit-building solutions. (Kim Decl. ¶ 4.)[3] Tomo no longer offers any credit card services. (*Id.*)

### B. Tomo's Terms and Conditions

Customers applying for Tomo's services and credit card offerings must complete a seven-step application process, including providing their personal information, verifying their identification, and providing their telephone number and address. (*Id.* ¶ 4.) In the initial step of the application process, customers must accept and agree to Tomo's terms and conditions, which include a mandatory individual arbitration provision and a class action waiver provision. (*Id.*)

Specifically, customers applying for Tomo's services and offerings must accept the terms and conditions by affirmatively clicking two checkboxes, both of which must be completed before proceeding beyond the initial step of the application. (*Id.* ¶ 5.) The second checkbox reads: "I agree to the updated terms. Click on this link to review." (Kim Decl. Ex. 2, p. 4). The underlined text is a hyperlink to the terms and conditions, and clicking this hyperlink allows customers to review the

[3] The Declaration of Soyeon Kim, Tomo's CEO ("Kim Decl."), is attached as Exhibit 2.

terms and conditions before deciding whether to accept them and proceed with the application. (Kim. Decl. ¶5).

**C. Plaintiff Accepted Tomo's Terms and Conditions**

Plaintiff initiated and completed an online application for services offered by Tomo on December 8, 2021. (*Id.* ¶ 10.) When she initiated her application for Tomo's services, she affirmatively clicked on and placed a checkmark within the box affirming that she agreed to Tomo's terms and conditions, in the same manner described above. (*Id.*) Further, in the process of signing up, Plaintiff voluntarily provided her cellular telephone number and her consent to be contacted by Tomo via telephone. (*Id.* ¶¶ 10–11.)

**D. The Arbitration Agreement**

In accepting the terms and conditions, Plaintiff agreed to resolve "any dispute or claim" with Tomo through binding arbitration or small claims court:

> A "**Claim**" means any legal dispute or controversy between you and us that arises from or related in any way to the Terms of Use, including, but not limited to, any dispute arising before the date of this Arbitration Provision. . . . "**Claim** has the broadest meaning.

(Ex. 1.)

The terms and conditions provide that if the dispute or claims is brought in arbitration, it must be conducted on an individual basis and not in a class, consolidated, or representative action:

> **Arbitration notice: THESE TERMS OF USE CONTAIN AN ARBITRATION PROVISION WHICH WILL APPLY TO YOU UNLESS YOU REJECT IT AS PROVIDED BELOW. IF APPLICABLE, THE ARBITRATION PROVISION WILL SIGNIFICANTLY AFFECT YOUR RIGHTS IF A DISPUTE ARISES BETWEEN YOU AND TOMOCREDIT. FOR EXAMPLE, YOU WILL NOT BE ABLE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATING TO MATTERS ARISING UNDER THESE TERMS AND CONDITIONS.**

(*Id.*) Tomo did not receive rejection from Plaintiff. (Kim Decl. ¶ 11.)

The terms of use go on to state

> To the extent permitted under federal law, you and we agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms.

(*Id.*)

Plaintiff did not waive any substantive rights by agreeing to arbitrate her claims on an individual basis rather than prosecuting them in a state or a federal court. Rather, the arbitration agreement expressly confirms that the arbitrator may award Plaintiff the same damages and relief as a court, including declaratory relief, statutory damages, and punitive damages. (*Id.*)

Nor did Plaintiff subject herself to any procedural prejudice by agreeing to arbitrate her claims on an individual basis. Plaintiff can effectively arbitrate her claims for free, except for the initial filing fee required by the American Arbitration

Association ("AAA"), as Tomo agrees to pay all reasonable and actual fees if Plaintiff prevails. (*Id.*)

Arbitrations are conducted by the AAA pursuant to its rules, including those promulgated for consumer-related disputes. (*Id.*) The agreement provides an inexpensive, efficient, and fair mechanism for customers like Plaintiff to resolve their disputes with Tomo.

## III.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. The arbitration agreement is governed by the FAA.

Congress passed the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). As such, it reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (internal quotation marks omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").[4] Thus, the FAA's "principal purpose" is to "ensur[e] that private arbitration agreements are

---

[4] Florida public policy also favors arbitration as a means of dispute resolution. *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279, 281 (Fla. 1988).

enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Because of this concern, courts are required to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

The FAA governs arbitration agreements in contracts where, as here, the arbitration agreement is in writing and the underlying transaction involves interstate commerce. 9 U.S.C. § 2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003). There is no question that the arbitration agreement at issue in this case is in writing. (Kim Decl. ¶ 5.) Nor is there any question that the arbitration agreement at issue in this case involves interstate commerce.

The Supreme Court has held that the FAA should apply as broadly as possible under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). Thus, whether a transaction involves interstate commerce "is not a rigorous inquiry; in fact, the contract need have only the slightest nexus with interstate commerce." *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 536 (D.N.J. 2004) (internal quotation marks omitted); *see also Chesapeake Appalachia, L.L.C. v. Ostroski*, 199 F. Supp. 3d 912, 915 (M.D. Pa. 2016); *St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.*, 916 F. Supp. 187, 190 (N.D.N.Y. 1996). Under this extremely low standard, the underlying transaction between Plaintiff and Tomo involves interstate commerce.

The transaction at issue involved a Florida resident (Plaintiff) and a business (Tomo) that was incorporated in Delaware and is domiciled in California. (Compl. ¶ 12.) This is indicative of a transaction that involves interstate commerce. *Pilot Catastrophe Servs., Inc. v. Fouche*, 145 So. 3d 151, 154 (Fla. 5th DCA 2014) ("A contract between a Florida resident and a foreign corporation is an agreement evidencing a transaction involving interstate commerce."). Moreover, the arbitration agreement itself provides that it "is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration." (Ex. 1.) The parties' agreement on this issue is also indicative of a transaction that involves interstate commerce. *Juarez v. DriveTime Car Sales Co.*, No. 3:19-CV-1132-BJD-LLL, 2023 WL 8651443 (M.D. Fla. Nov. 17, 2023).

Courts typically find that contracts for a consumer credit card between citizens of different states involve interstate commerce. *See, e.g.*, *Vaiano v. United Nat'l Corp.*, 733 F. Supp. 3d 32, 45 (D. Mass. 2024); *Bernsley v. Barclays Bank Delaware*, 657 F. Supp. 3d 1327, 1340 (C.D. Cal. 2023); *Hartranft v. Encore Capital Group, Inc.*, 543 F. Supp. 3d 893, 922-23 (S.D. Cal. 2021); *Ward v. Discover Bank*, No. 3:19-CV-02124-SAL, 2020 WL 1922908, at *4 (D.S.C. Apr. 21, 2020); *Byrd v. Wells Fargo, N.A.*, No. 3:17-CV-522-WHB-JCG, 2018 WL 9617771, at *2 (S.D. Miss. Mar. 28, 2018).

In sum, the FAA governs the arbitration agreement between Plaintiff and Tomo because it is in writing and the underlying transaction involves interstate commerce.

**B. The parties' arbitration agreement is enforceable.**

The enforceability of an arbitration agreement is generally a matter of state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). Under Florida law, the Court must consider the following factors in determining the enforceability of an arbitration agreement: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). If the Court answers these questions in the affirmative, it must grant Tomo's motion. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (noting that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"); *Bill Heard Chevrolet Corp. v. Wilson*, 877 So. 2d 15, 18 (Fla. 5th DCA 2004) ("It is now an axiom of federal and Florida law that written agreements to arbitrate are binding and enforceable, and that in the absence of waiver a court must compel arbitration when an arbitration agreement and an arbitrable issue exist.").

**1. The parties' arbitration agreement is a valid contract.**

A valid contract in Florida requires only "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Land Co. of Osceloa Cty., LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015) (internal quotation marks omitted). No other requirements may be imposed to create a valid arbitration agreement under the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 254 (2017) (holding that courts may not place formation requirements on arbitration agreements that do apply to other types of contracts); *Concepcion*, 563 U.S. at 339 (noting that "courts must place arbitration agreements on an equal footing with other contracts).

The parties' arbitration agreement satisfies these requirements. As part of Plaintiff's application for a Tomocredit Card, Plaintiff and Tomo agreed to an arbitration agreement. Plaintiff accepted the terms and conditions in her application for use the credit card, one of which was the arbitration agreement, by affirmatively clicking a box and placing a checkmark indicating that she had reviewed and agreed to Tomo's terms and conditions, including the arbitration agreement, when she initiated an application for Tomo's services on its website. (Kim Decl., ¶¶ 10-11)

This is a type of online or electronic contracting known as a "clickwrap agreement," which "occurs when a website directs a purchaser or user to the terms and conditions of the sale and <u>requires</u> the user to click a box to acknowledge that they

have read those terms and conditions." *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022). Clickwrap agreements "are generally enforceable" under Florida law. *Id.* Thus, the fact that Plaintiff did not physically sign a paper agreement does not affect the validity of her assent to and acceptance of the terms and conditions, including the arbitration agreement.

The terms and conditions, including the arbitration agreement, were supported by good and valuable consideration, such as Tomo's review and consideration of Plaintiff's application for the extension of credit and the right for her to use the credit card. *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005) ("A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do."). With respect to the arbitration agreement specifically, which applies both to claims held by Plaintiff and to claims held by Tomo, Florida law provides that "the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same." *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005). In other words, when an arbitration agreement is mutual, the mutuality provides sufficient consideration. *McKinnon v. Palm Chevrolet of Gainesville, LLC*, No. 1:09cv174-SPM-AK, 2009 WL 10674171, at *2 (N.D. Fla. Nov. 6, 2009) ("By obligating itself to submit its own claims to mutually binding arbitration, Defendant supplied sufficient consideration to support the Arbitration Agreement.").

Finally, as to the sufficiency of the specification of terms so that the obligations involved can be ascertained, a review of the terms and conditions, including the arbitration agreement, shows that they are not specified or unascertainable. Nor does Plaintiff allege in the complaint that the terms and conditions, including the arbitration agreement, are not sufficiently specified for her to be able to ascertain what her obligations were.

**2. Plaintiff's claims are within the scope of the arbitration agreement.**

The next factor for the Court to determine is whether Plaintiff's claims are within the scope of the arbitration agreement. "The party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1323-24 (S.D. Fla. 2016) (internal quotation marks omitted). This means that Plaintiff bears the burden of proving that her claims are outside the scope of the arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

"[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). This presumption of arbitrability is particularly applicable when the arbitration clause is broad. *AT & T Techs., Inc.*, 475 U.S. at 650.

The arbitration agreement between Plaintiff and Tomo is extremely broad. It requires either party to arbitrate a "claim" upon the election of the other party. A "claim" is defined as follows:

> A "**Claim**" means any legal claim, dispute or controversy between you and us that arises from or relates in any way to these Terms of Use, including, but not limited to, any dispute arising before the date of this Arbitration Provision and any dispute relating to: . . . . "**Claim**" has the broadest possible meaning. It includes initial claims, counter-claims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Provision. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.

(Ex. 1)

Plaintiff's claims arise out of her application for a Tomo Card Mastercard and the corresponding terms and conditions. The complaint also shows that Plaintiff's claims are based on alleged violations of various federal consumer protection laws. All claims alleged by Plaintiff in this case are within the scope of the arbitration agreement. If the Court considers there to be a close call on this issue, it must remember that all doubts must be resolved in Tomo's favor. Moreover, when Plaintiff initiated her online application for services offered by Tomo, she voluntarily provided her cellular telephone number to Tomo and affirmatively consented for Tomo to contact her about her account via telephone. (Kim Decl. ¶¶ 9–11.) Thus, any communications by Tomo to Plaintiff are a direct result of Plaintiff's use of Tomo's services, and any claims by Plaintiff based on such communications arise from her use of Tomo's services.

In sum, Plaintiff cannot satisfy her burden of proving that her claims are outside the scope of the arbitration agreement. This is a high burden because she is required to show that she and Tomo "clearly express[ed] their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998); *see also AT & T Techs., Inc.*, 475 U.S. at 650 ("[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). There is no such clear expression of intent to exclude any of the claims Plaintiff brought in this case from the arbitration agreement's

coverage, and Plaintiff has no such "forceful evidence." Accordingly, Plaintiff cannot overcome the presumption of arbitrability. Because the arbitration agreement applies to all claims alleged in the complaint, the Court should order this case to arbitration.

**3. Tomo has not waived its right to arbitration.**

"Waiver of the right to arbitration results from active participation in a lawsuit or from taking action inconsistent with that right." *O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 185 n.4 (2006). Tomo has done neither. In fact, the only participation in this case undertaken by Tomo is (1) the filing of a Notice of Removal to Federal Court (2), (3) participation in discussions regarding the Case Management Report, (4) the filing of Tomo's corporate disclosure statement and certificate of interested persons, (5) the filing of a Response to this Court's order to show cause for the parties failure to file a timely Case Management Report, and (6) the joint filing of a case management report, <u>in which Tomo noted multiple times that Tomocredit did not waive its right, and would be seeking, to compel arbitration</u>. Thus, prior to filing this motion, Tomo did not engage in any substantive participation in this case and did not take any action inconsistent with its right to arbitration of Plaintiff's claims.

**4. The parties' arbitration agreement is not unconscionable.**

For an arbitration agreement to be unenforceable on the basis of unconscionability, the party opposing arbitration must prove that the agreement is both procedurally and substantively unconscionable. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. 1st DCA 2003). Plaintiff cannot make this showing, and so she cannot avoid the arbitration agreement.

A determination of procedural unconscionability under Florida law requires consideration of the following factors:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010). As to the first factor, Plaintiff does not allege in the complaint that she was unduly pressured or harassed into contracting for Tomo's services. Plaintiff completed the entire contracting process online, and so she did not interact with a representative of Tomo who could have pressured or harassed her.

Further, even assuming Plaintiff lacked bargaining power and that the arbitration agreement was non-negotiable or a contract of adhesion, the second and third

factors still weigh in Tomo's favor because she was given 60 days to submit a notice of rejection to Tomo. (Ex. 1.) Had she rejected the arbitration agreement, there would have been no effect on her overall contract with Tomo. (*Id.*) Courts in Florida often find that the right to opt out of a contractual provision means there is no procedural unconscionability. *See, e.g.*, *Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017) (per curiam); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224 (M.D. Fla. 2013).

Lastly, Tomo does not have any information at this time about Plaintiff's ability to understand the arbitration agreement, but it notes that a person who signs a contract is presumed to know and understand its terms and cannot avoid the consequences of the contract because she chose not to read it, chose not to have its terms explained to her, or did not understand it. *See, e.g.*, *Delivery.com Franchising, LLC v. Moore*, No. 20-20766-CIV-COOKE/GOODMAN, 2020 WL 3410347, at *3 (S.D. Fla. June 19, 2020); *Citibank v. Dalessio*, 756 F. Supp. 2d 1361, 1367-68 (M.D. Fla. 2010).

As for Plaintiff's opportunity to understand the arbitration agreement, Tomo again notes that Plaintiff completed the entire contracting process online. This means she had essentially unlimited time to read and understand the arbitration agreement and to ask someone else for assistance before she agreed to the overall

contract. Then, after she agreed to the overall contract, she had another 60 days to think about the arbitration agreement and to reject it. She did not. (Kim Decl. ¶ 11.) In addition, the arbitration agreement is prominently featured in the terms and conditions in easy-to-understand language. It is not hidden in a maze of fine print. There is also an arbitration notice at the top of page 1 in all capital letters and bold print. (Ex. 1.)

"[S]ubstantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are unreasonable and unfair." *Pendergast*, 592 F.3d at 1139 (internal quotation marks omitted). A substantively unconscionable agreement is "one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Belcher v. Kier*, 558 So. 2d 1039, 1044 (Fla. 2d DCA 1990) (quoting *Hume v. U.S.*, 132 U.S. 406, 411 (1889)); *see also Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 284-85 ("To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so 'outrageously unfair' as to 'shock the judicial conscience.'").

The arbitration agreement is not substantively unconscionable because there is no provision in it that is outrageously unfair or that should shock the judicial conscience. It allows Plaintiff to recover the same relief on her individual claims in

arbitration as would be available to her in court, including injunctive and declaratory relief and statutory damages. (Ex. 1.)

Plaintiff can effectively arbitrate her claims for free, except for the initial filing fee required by the AAA, if Plaintiff prevails. (*Id.*) Also, the location for arbitration is "a location that is reasonably near your residence or in another location agreed to by you and us." (*Id.*) The arbitration agreement is also mutual, as Tomo's claims against Plaintiff are also subject to arbitration. (*Id.*) The existence of a class action waiver in the arbitration agreement does not constitute unconscionability or render the arbitration agreement unenforceable. *Concepcion*, 563 U.S. at 341–44. To the contrary, the arbitration agreement provides a streamlined method for fair and efficient dispute resolution between Tomo and aggrieved customers, such as Plaintiff, which is what the FAA was enacted to promote. *Id.*; *KPMG LLP*, 565 U.S. at 21.

For the foregoing reasons, the arbitration agreement is neither procedurally nor substantively unconscionable, and so this is not a basis for Plaintiff to avoid her obligations thereunder.

**C. The Court is required to stay the case until the arbitration is completed.**

Once the Court determines that Plaintiff's claims are subject to arbitration, it is required to stay the case pending completion of arbitration. 9 U.S.C. § 3.

# IV.

# CONCLUSION

For the foregoing reasons, Tomo asks the Court to compel Plaintiff to submit her claims to binding arbitration on an individualized basis pursuant to the terms and conditions of her agreement with Tomo. In addition, Tomo asks the Court to stay this case until the arbitration is completed.

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(C) AND CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(B), on September 16, 2026, counsel for Tomo conferred with counsel for Plaintiff. Plaintiff opposes the relief sought in this motion. The memorandum included herein contains 4,254 words.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

Christian M. Gunneson
Florida Bar No. 123823
Matthew R. Stersic
Florida Bar No. 0159860
FREEMAN MATHIS & GARY, LLP
2502 North Rocky Point Drive, Suite 550
Tampa, FL 33607-1447
(813) 774-6363 (telephone)
christian.gunneson@fmglaw.com
matthew.stersic@fmglaw.com
*Attorneys for Defendant TomoCredit Inc. d/b/a Tomo Card*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing **DEFENDANT TOMOCREDIT INC.'s MOTION TO COMPEL ARBITRATION AND TO STAY FURTHER PROCEEDINGS IN THIS CASE AND INCORPORATED MEMORANDUM OF LAW** using the CM/ECF system which will automatically send electronic mail notification of such filing to the following counsel of record who are CM/ECF participants:

This 18th day of September, 2026.

Christian M. Gunneson
Florida Bar No. 123823
Matthew R. Stersic
Florida Bar No. 0159860
FREEMAN MATHIS & GARY, LLP
2502 North Rocky Point Drive, Suite 550
Tampa, FL 33607-1447
(813) 774-6363 (telephone)
christian.gunneson@fmglaw.com
matthew.stersic@fmglaw.com